[No. 200,064-9. En Banc.]
Argued June 29, 2004.    Decided February 3, 2005.

*In the Matter of the Disciplinary Proceeding Against* MARGARET DIAMOND CHRISTOPHER, *an Attorney at Law.*

---

670

SANDERS and J.M. JOHNSON, JJ., did not participate in the disposition of this case.

*Margaret Diamond Christopher*, pro se.
*Kevin M. Bank*, for petitioner Bar Association.
*Kurt M. Bulmer*, for respondent Christopher.

¶1 IRELAND, J.[*] — In this case we consider whether to impose the Washington State Bar Association Disciplinary

---

[*] Justice Faith Ireland is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).

Board's (Board) recommended sanction of an 18-month suspension followed by three years of probation against Attorney Margaret Diamond Christopher. Christopher violated Rules of Professional Conduct (RPC) 3.3(a)(1), 3.3(a)(4), 3.3(b), 8.4(b), 8.4(c), and 8.4(d). The Washington State Bar Association (WSBA) contends that the appropriate sanction is disbarment. Christopher requests that we sanction her with a reprimand, as recommended by the hearing officer. We impose the sanction recommended by the Board.

## FACTS

¶2 Attorney Christopher was admitted to the practice of law in the state of Washington on June 20, 1995. In 1999, Christopher worked as an associate at the law firm of Graham and Dunn in Seattle, Washington. In the first case Christopher was assigned to handle on her own, she represented the defendants in a civil action that was subject to mandatory arbitration. On August 25, 1999, the arbitrator ruled in favor of the plaintiff.

¶3 After receiving the arbitrator's ruling, Christopher became concerned that she had made a mistake by not submitting an offer of judgment to the plaintiff prior to the arbitration in order to preserve her clients' right to an award of attorney fees in the event of a successful appeal to the superior court.[1] She worried that her failure to submit an offer of judgment might expose her law firm to a malpractice claim.

¶4 On August 25, 1999, Christopher created an offer of judgment pleading, which she signed and backdated to July 27, 1999. She attached a stamped declaration of mailing on which she forged her secretary's signature. Christopher filed the offer of judgment pleading and mailed a copy to opposing counsel. She also created a declaration in support

---

[1] An offer of judgment may be submitted at any time more than 10 days before trial begins by a party defending against a claim. The offer is deemed withdrawn when the adverse party does not accept it, and evidence of the offer is inadmissible except in a proceeding to determine costs. CR 68; RCW 4.84.280.

of attorney fees, which stated that the offer of judgment was a true and correct copy of the defendants' offer to settle and that it had been served on the plaintiff on July 27, 1999. Christopher created an entry in her billing records to falsely reflect that she had prepared and finalized the offer of judgment on July 27, 1999.

¶5 After the papers were filed, the plaintiff's attorney called and spoke with Christopher's secretary. On September 2, 1999, Christopher wrote to the arbitrator and stated, "[M]y declaration and fee documentation was [sic] submitted simply to preserve the record in case of an appeal. I apologize for any confusion that this may have caused." Clerk's Papers at 12.

¶6 In early October, Christopher and her secretary exchanged e-mails and conferenced about the offer of judgment and declaration in support of fees. On October 11, 1999, the secretary said she would report the matter to Graham and Dunn's ethics chair or managing partner if Christopher did not do it herself. On the same day, the secretary reported the matter to management. On October 12, 1999, Christopher met with management. She was fired and informed that if she did not self-report the matter to the WSBA, management would report it. On October 13, 1999, Christopher reported the matter to the WSBA.

¶7 The WSBA filed a formal complaint against Christopher in August 2000. The complaint charged Christopher with four counts of misconduct, alleging that she (1) falsified various documents filed with the court, (2) made false statements under oath, (3) forged the signature of her secretary on one of the falsified documents, and (4) demonstrated her unfitness to practice law by her conduct.

¶8 The parties stipulated to most of the facts prior to the hearing. The hearing officer concluded that the WSBA proved counts 1 and 3, but he dismissed counts 2 and 4. For count 1, the hearing officer concluded that Christopher violated RPC 3.3(a)(1) (making false statements of material fact to a tribunal), RPC 3.3(a)(4) (offering evidence that the lawyer knows to be false), RPC 8.4(c) (engaging in conduct

involving dishonesty, fraud, deceit, or misrepresentation), and RPC 8.4(d) (engaging in conduct prejudicial to the administration of justice). For count 3, the hearing officer concluded that by committing forgery, Christopher violated RPC 8.4(b) (committing a criminal act that reflects adversely on the attorney's honesty, trustworthiness, or fitness as a lawyer).

¶9 The hearing officer found that Christopher's state of mind was intentional and that her false statements were made with the intent to deceive the arbitration panel and the parties.

¶10 The hearing officer found several mitigating factors, including personal and emotional problems, imposition of other penalties or sanctions, inexperience in the practice of law, and interim rehabilitation. The hearing officer found two aggravating factors—dishonest motive and multiple offenses. He concluded the aggravating factors were not significant, and he recommended that Christopher receive a reprimand and a two-year period of probationary oversight.

¶11 The Board found that the presumptive sanction against Christopher was disbarment. By a 6-4 vote, the majority concluded that the hearing officer gave more weight to some of the mitigating factors than the record justified. The majority also found that Christopher's dishonest motive and the vulnerability of the victims were significant aggravating factors. Therefore, the Board recommended an 18-month suspension and three years of probation.

¶12 Petitioner WSBA appeals the Board's decision and requests that Christopher be disbarred. Christopher argues that the appropriate sanction is a reprimand.

## ISSUES

¶13 1.  Is disbarment the presumptive sanction for the falsification of documents and the forgery of another's signature?

¶14 2. Did the Board properly apply the aggravating and mitigating factors in determining its recommended sanction?

¶15 3. Do unanimity and proportionality justify a departure from the presumptive sanction?

## ANALYSIS

1. Is disbarment the presumptive sanction for the falsification of documents and the forgery of another's signature?

¶16 This court has the ultimate responsibility and authority for determining the nature of lawyer discipline. *In re Disciplinary Proceeding Against Kagele*, 149 Wn.2d 793, 812, 72 P.3d 1067 (2003). In disciplinary cases, we accept as verities any unchallenged factual findings made by the hearing officer and approved by the Board. *In re Disciplinary Proceeding Against Carmick*, 146 Wn.2d 582, 594, 48 P.3d 311 (2002). We review conclusions of law de novo. *In re Disciplinary Proceeding Against Halverson*, 140 Wn.2d 475, 485, 998 P.2d 833 (2000).

¶17 Although we are not bound by the recommendations of the Board regarding sanctions, we give great weight to the conclusions of the Board and will not lightly depart from its recommendations. *In re Disciplinary Proceeding Against Haskell*, 136 Wn.2d 300, 317, 962 P.2d 813 (1998). We give greater weight to the Board's conclusions regarding the recommended sanction than to those of the hearing officer because the Board is the only body that hears the full range of disciplinary matters, giving it a " 'unique experience and perspective in the administration of sanctions.' " *Carmick*, 146 Wn.2d at 601 (quoting *In re Disciplinary Proceeding Against Dann*, 136 Wn.2d 67, 84, 960 P.2d 416 (1998)).

¶18 In Washington, the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 & Supp. 1992) governs bar discipline cases. *Halverson*, 140 Wn.2d at 492. The ABA *Standards* provides a two-step

process to determine the proper sanction after a finding of lawyer misconduct. First, the presumptive sanction is determined by considering (1) the ethical duty violated, (2) the lawyer's mental state, and (3) the extent of the actual or potential harm caused by the misconduct. *Id.* Second, aggravating and mitigating factors are weighed to determine whether a deviation from the presumptive sanction is warranted. *In re Disciplinary Proceeding Against Kuvara*, 149 Wn.2d 237, 252, 66 P.3d 1057 (2003). Finally, after completion of the two-step process, we consider whether the revised *Noble* factors of unanimity and proportionality should alter the sanction. *Kuvara*, 149 Wn.2d at 259 (citing *In re Disciplinary Proceeding Against Noble*, 100 Wn.2d 88, 667 P.2d 608 (1983)).

¶19 Christopher does not challenge the Board's findings that she violated RPC 3.3(a)(1), 3.3(a)(4), 8.4(c), and 8.4(d). Nor does she challenge the Board's finding that her mental state was intentional. These unchallenged findings are verities on appeal. *Carmick*, 146 Wn.2d at 594.

¶20 Christopher does challenge the Board's application of standards 5.11(b) and 6.11 in determining that the presumptive sanction is disbarment. She argues that crucial elements of standards 5.11(b) and 6.11 are not present in this case. She urges us to adopt the hearing officer's presumptive sanctions of suspension and reprimand under standards 4.6, 5.1, 6.1, and 6.2.

a. ABA Standard 5.11

■ ¶21 Disbarment is appropriate under standard 5.11(b) when a lawyer engages in any "intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice" law. Eight or more members of the Board determined that standard 5.11(b) applied to Christopher's conduct.[2]

---

[2] The six-member majority agreed that standard 5.11(b) applied, and at least two dissenting members of the Board agreed.

■■ ¶22 Christopher contends that standard 5.11(b) does not apply. She claims that the misconduct was an isolated event in her life, and it is not likely to recur. Christopher asserts that while her ethical violations reflect adversely on her, the misconduct does not show that she is unfit to practice law. Instead, she argues that standard 5.12 (suspension)[3] or standard 5.13 (reprimand)[4] should apply to her failure to maintain personal integrity under standard 5.1.

¶23 The WSBA disagrees. The WSBA contends that under Washington law, standard 5.11(b) clearly applies to Christopher's conduct. *See Kuvara*, 149 Wn.2d at 252 (applying standard 5.11 in disbarring an attorney who committed forgery and false certification).

■ ¶24 In this case, the hearing officer found that Christopher committed the criminal act of forgery. In addition, Christopher intentionally made false statements under oath with the intent to deceive the arbitrator and the parties. *Kuvara* supports the conclusion that Christopher's conduct severely adversely reflects on her fitness to practice law. We hold that the Board correctly determined that standard 5.11(b) applies. Thus, the presumptive sanction is disbarment.[5]

b. ABA Standard 6.11

■ ¶25 Christopher argues that the Board incorrectly applied standard 6.11, which provides that "[d]isbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false

---

[3] Standard 5.12 states: "Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice."

[4] Standard 5.13 states: "Reprimand is generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law."

[5] Because we hold that the presumptive sanction under standard 5.1 is disbarment, Christopher's argument for reprimand or suspension fails.

document, or improperly withholds material information, *and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding.*" (Emphasis added.) Christopher insists that no actual or potential harm to the legal proceeding arose from her conduct.

¶26 The WSBA argues that there was harm to the legal proceeding because both the arbitrator and opposing counsel were relying on Christopher to represent her client without resorting to forging signatures and falsifying evidence. " '[V]iolations of the law by lawyers contribute to the erosion of respect for legal institutions and the law.' " *In re Disciplinary Proceeding Against Petersen*, 120 Wn.2d 833, 872, 846 P.2d 1330 (1993) (quoting *In re Disciplinary Proceeding Against Curran*, 115 Wn.2d 747, 762, 801 P.2d 962 (1990)).

¶27 The presumptive sanction of disbarment both preserves public confidence in the legal system and deters other attorneys from similar conduct. Christopher fully intended to perpetrate a fraudulent scheme. Had she succeeded, the court might have relied on the forged documents and false declarations in awarding the prevailing party attorney fees. The WSBA persuasively argues that this caused serious injury to the profession and to the judicial system. We hold that standard 6.11 applies to Christopher's misconduct.

2. Did the Board properly apply the aggravating and mitigating factors in determining its recommended sanction?

¶28 We next consider whether the Board properly examined aggravating and mitigating factors in determining the presumptive sanction. *Halverson*, 140 Wn.2d at 493. A balance of the factors may alter the presumptive sanction. However, the Board should deviate from the presumptive sanction only if the aggravating or mitigating factors are sufficiently compelling to justify a departure. *In re Disciplinary Proceeding Against Anschell*, 141 Wn.2d 593, 615, 9 P.3d 193 (2000).

¶29 The hearing officer found nine mitigating factors and two aggravating factors. These findings are unchallenged and are verities on appeal. *Kuvara*, 149 Wn.2d at 246. The hearing officer recommended a reprimand and two years' probation. However, the Board concluded that the hearing officer gave too much weight to the mitigating factors. The Board additionally found that the arbitrator and opposing counsel were vulnerable victims and determined this was a significant aggravating factor. The Board recommended an 18-month suspension with three years' probation.

a. Aggravating Factors

¶30 As aggravating factors, the Board adopted the hearing officer's findings that Christopher (1) had a dishonest and selfish motive, and (2) committed multiple offenses. The Board also found vulnerability of the victim as an additional aggravating factor.

Dishonest or selfish motive

¶31 With regard to a dishonest and selfish motive, Christopher argues that her misconduct was not done to line her pockets. Rather, Christopher insists that she was driven by personal problems that arose from an incident that occurred weeks earlier. The WSBA disagrees and contends that Christopher engaged in a deliberate, dishonest scheme rather than taking responsibility for her actions. The hearing officer found that Christopher was concerned with exposing her law firm to a malpractice claim, and thus she acted to protect herself and her law firm from liability for failing to file an offer of judgment in advance of the arbitration. The attempted cover-up was the major reason for Christopher's misconduct.

¶32 We agree that most often we have found dishonest or selfish motive to be an aggravating factor in cases where an attorney steals a client's money. *Dann*, 136 Wn.2d at 81. However, Christopher acted out of a selfish motive to protect herself from criticism when she believed she had

made a mistake in not filing an offer of judgment. She chose a dishonest path, at least in part, to protect herself. We adopt the Board's conclusion that dishonest and selfish motive is a significant aggravating factor in this case.

## Vulnerability of the victim

¶33 Concerning the vulnerability of the victim, the Board made the additional finding that this factor was present. The WSBA argues that the arbitrator and opposing counsel "were vulnerable because they had every reason to believe and expect that a lawyer would not deceive them by forging signatures and falsifying evidence in a legal proceeding." Br. of WSBA at 33. On the other hand, Christopher argues that the arbitrator and opposing counsel were neither infirm nor in a fiduciary relationship with her. Christopher concedes that she certainly took advantage of them, but she claims that there is no reason to treat the arbitrator and opposing counsel as vulnerable.

¶34 Neither party offers authority to support its contention on the vulnerability of the victim as an aggravating factor. In previous cases, we have concluded that clients unfamiliar with the legal system, and clients who have cultural and language barriers, are not vulnerable victims absent a showing of physical or mental disability or other characteristic that renders them "particularly vulnerable." *In re Disciplinary Proceeding Against Anschell*, 149 Wn.2d 484, 514, 69 P.3d 844 (2003) (immigration client with a language barrier who was trusting and completely dependent on attorney for legal advice was not a vulnerable victim). A trust relationship alone does not create a vulnerable victim. *In re Disciplinary Proceeding Against Johnson*, 118 Wn.2d 693, 706, 826 P.2d 186 (1992) (a client who was a reasonably prudent investor and in a trust relationship with his attorney was not a vulnerable victim). Thus, while the arbitrator and opposing counsel had every reason to believe Christopher, there is no basis for characterizing them as particularly vulnerable, especially in light of their legal expertise. If victims who are

completely unfamiliar with the legal system are not vulnerable, we cannot reasonably conclude experienced lawyers are vulnerable. We do not adopt the Board's view that vulnerability of the victim was a significant aggravator. We conclude that this factor was not present.

b. Mitigating Factors

¶35 The Board adopted all of the mitigating factors, as determined by the hearing officer, including that Christopher (1) had no prior disciplinary record, (2) had personal or emotional problems, (3) exercised timely good faith effort to make restitution or to rectify the consequences of misconduct after being confronted about her actions, (4) gave full and free disclosure to the Board with a cooperative attitude, (5) was inexperienced in the practice of law, (6) had good character and reputation, (7) has been rehabilitated, (8) has been otherwise sanctioned through negative publicity and job loss, and (9) has shown substantial remorse.

¶36 The WSBA challenges the Board's giving significant weight to the following mitigating factors: (1) personal or emotional problems, (2) Christopher's remorsefulness, and (3) steps taken by Christopher to prevent a recurrence.

Personal or emotional problems

¶37 The Board found Christopher's personal or emotional problems to be a significant mitigating factor. "At the time of the events involved in this matter Ms. Christopher was going through substantial personal problems which she and her doctor discussed at the hearing." Findings of Fact at 6. While her psychologist explained the reasons for Christopher's misconduct, the psychologist acknowledged that the conduct did not rise to the level of "mental disability."

¶38 The WSBA claims that the Board erred when it placed significant weight on Christopher's personal or emotional problems. The WSBA argues that personal and emotional problems may be given weight as a mitigating

factor only when the misconduct is largely attributable to a condition that qualifies as a "mental disability." Br. of WSBA at 25 (citing ABA *Standards* std. 9.32 cmt. at 50-51; *Kuvara*, 149 Wn.2d at 248-49; *In re Disciplinary Proceeding Against McLendon*, 120 Wn.2d 761, 773, 845 P.2d 1006 (1993)).

¶39 In other instances where an attorney has engaged in criminal activity, we have determined that personal or emotional problems were not a significant mitigating factor that altered the presumptive sanction of disbarment. For example, we held that evidence of some depression was not a significant mitigating factor where an attorney stole client funds. *Petersen*, 120 Wn.2d at 871-73. Similarly, an attorney's stressful divorce did not constitute a significant mitigating factor when he stole from the law firm. *In re Disciplinary Proceeding Against Selden*, 107 Wn.2d 246, 255-56, 728 P.2d 1036 (1986).

¶40 Christopher's psychologist testified that the personal and emotional problems Christopher experienced several weeks prior to her misconduct did not give rise to a mental disability. The psychologist testified that the problems experienced by Christopher are experienced by many people. There is no demonstrated connection between her problems and the intentional and deliberate falsification of documents. Therefore, we do not adopt the Board's conclusion that personal or emotional problems, combined with physical or mental disability or impairment, constituted a significant mitigating factor.

Remorse

¶41 The WSBA also argues that the Board incorrectly concluded that Christopher's remorse was a significant mitigating factor. The WSBA relies on *In re Disciplinary Proceeding Against Whitt*, 149 Wn.2d 707, 72 P.3d 173 (2003), for the proposition that little or no weight should be given to remorse that occurs after the wrongdoer has been accused of a deception. This is a misreading of *Whitt*, where we determined that it was error for the Board to add

remorse as a mitigating factor when it was not supported by a clear preponderance of the evidence. 149 Wn.2d at 721.

¶42 The weight given to a mitigating factor is determined by the totality of the circumstances. *Id.* (citing *In re Disciplinary Proceeding Against Vetter*, 104 Wn.2d 779, 794, 711 P.2d 284 (1985)). Here, the hearing officer found that "Christopher has substantial remorse and has had it from the very beginning. She has apologized and regrets her actions. She genuinely recognizes what she did was wrong." Findings of Fact at 9. While Christopher was slow at first to confess, she has shown genuine remorse throughout the entire disciplinary process. She acknowledged the wrongful nature of her actions. She stipulated to the wrongful conduct and did not make the WSBA prove her conduct by a clear preponderance. Further, in applying for various legal jobs after her firing from Graham and Dunn, Christopher candidly disclosed to potential employers what had happened. We adopt the Board's determination that remorse was a significant mitigating factor.

Recurrence

¶43 The WSBA argues that the Board erred in considering steps taken by Christopher to prevent recurrence as a mitigating factor. The hearing officer found that in the time since the misconduct, Christopher has been rehabilitated and that recurrence is unlikely. The Board adopted the hearing officer's finding regarding this matter, applying "interim rehabilitation" as a significant mitigating factor. But the current ABA *Standards* address rehabilitation only in the context of recovery from mental disability or chemical dependency. Standard 9.32(i). Because Christopher did not suffer a mental disability or chemical dependency, rehabilitation is not a mitigating factor here.

¶44 In sum, we uphold the Board's determination that Christopher's dishonest or selfish motive was a significant aggravating factor and that multiple offenses was also an aggravating factor. However, we hold that the Board erred in concluding that vulnerability of the victim was a factor.

We uphold the Board's conclusions on the mitigating factors except for the conclusion that Christopher's personal or emotional problems were a significant mitigating factor and that her interim rehabilitation was a mitigating factor.

c. Recommended Sanction

■ ¶45 We now turn to the recommended sanction. "[T]he Board should deviate from the presumptive sanction only if the aggravating and mitigating factors are sufficiently compelling to justify a departure." *In re Disciplinary Proceeding Against Cohen*, 149 Wn.2d 323, 339, 67 P.3d 1086 (2003). As noted, the Board here departed from the presumptive sanction of disbarment and determined that Christopher's conduct warranted an 18-month suspension with a three-year probationary period.

¶46 We agree with the Board that the predominance of mitigating factors justifies a departure from the presumptive sanction. The mitigating factors in this case far outweigh the aggravating factors, making disbarment an inappropriate and unnecessarily harsh sanction.

3. Do unanimity and proportionality justify a departure from the presumptive sanction?

■ ¶47 We will alter a sanction if we determine that it is inappropriate after considering the factors of unanimity and proportionality. *Kuvara*, 149 Wn.2d at 259. In considering the unanimity of the Board in making its decision, we give less deference to the decision of a divided board. *Whitt*, 149 Wn.2d at 723. Here, the Board decided 6-4 in favor of Christopher's 18-month suspension. The dissenters vary in their opinions on what the appropriate sanction should be, but two of them recommended lighter sanctions (reprimand and suspension for three months). It is unclear from the record, but it appears that at least one of the other dissenters favored a sanction lighter than the majority approved. The extent of the Board's disagreement does not provide a reason for departing from its recommended sanction.

■ ¶48 Under proportionality review, we analyze whether the recommended sanction is proper when com-

pared to similarly situated cases. *In re Disciplinary Proceeding Against Miller*, 149 Wn.2d 262, 285, 66 P.3d 1069 (2003). Proportionate sanctions are those which are " 'roughly proportionate to sanctions imposed in similar situations or for analogous levels of culpability.' " *Anschell*, 141 Wn.2d at 615 (quoting *In re Disciplinary Proceeding Against Gillingham*, 126 Wn.2d 454, 469, 896 P.2d 656 (1995)).

¶49 We considered a situation similar to Christopher's in the recent case of *In re Disciplinary Proceeding Against Dynan*, 152 Wn.2d 601, 98 P.3d 444 (2004). *Dynan* involved three separate but similar cases handled by the attorney. In each, the attorney was hired by the defendants' insurers to represent the defendants in civil suits. Following the resolution of the cases, Dynan sought attorney fees pursuant to statute and mandatory arbitration rules. However, in his request for fees, Dynan did not use the actual billings he submitted to the insurance companies. Rather, Dynan directed his staff to conceal the actual fees charged with correction fluid and to insert higher amounts. In each case, Dynan submitted sworn declarations to the court in support of his motion for attorney fees, along with the false billing records. Dynan also sent the false billings to opposing counsel.

¶50 We stated that the presumptive sanction for Dynan's knowing alteration of the bills and his submission of false declarations to the court was disbarment. We then looked at the mitigating and aggravating factors and noted that the aggravating factors slightly outweighed the mitigating factors. However, a proportionality analysis persuaded us to reduce the Board's recommended sanction of nine months, and we imposed a six-month suspension.

¶51 The facts of the present case are similar. Christopher prepared a backdated offer of judgment, forged her secretary's signature, created a false billing entry, submitted the offer of judgment to the arbitrator, and filed it with the court. This was a multiple step process, which like *Dynan*, involved multiple deceptions. However, unlike

*Dynan,* Christopher's misconduct involved a single case. In addition, the Board and the hearing officer found even more mitigators applicable to Christopher's conduct than were found applicable to Dynan's conduct. Therefore, a proportionality analysis convinces us that the presumptive sanction of disbarment is not appropriate in this case.

¶52 On the other hand, we acknowledge that Christopher forged her secretary's signature. This serious transgression justifies a harsher sanction than Dynan received. While we are not bound by the Board's recommendation, we do not lightly depart from it. *Kuvara,* 149 Wn.2d at 246. We adopt the Board's recommendation unless we can articulate a specific reason to depart from it. *In re Disciplinary Proceeding Against Tasker,* 141 Wn.2d 557, 565, 9 P.3d 822 (2000). In this case, there is no specific reason to depart from the Board's recommendation.

## CONCLUSION

¶53 We agree with the Board that the presumptive sanction is disbarment. We also agree that after balancing the aggravating and mitigating factors and considering unanimity and proportionality, a departure from the presumptive sanction is justified. We therefore order an 18-month suspension followed by a three-year period of probation as recommended by the Board.

ALEXANDER, C.J.; C. JOHNSON, MADSEN, BRIDGE, CHAMBERS, OWENS, and FAIRHURST, JJ.; and BAKER, J. Pro Tem., concur.

After modification, further reconsideration denied March 25, 2005.