

**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE   JUL 1 8 2013

_for_ CHIEF JUSTICE

This opinion was filed for record
at 8:00 a.m. on July 18 2013

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Disciplinary Proceeding Against | ) ) ) | No. 200,960-3 |
| ROSAURA DEL CARMEN RODRIGUEZ, | ) ) ) ) ) | En Banc<br><br>Filed     JUL 1 8 2013 |
| an Attorney at Law. | ) ) | |

FAIRHURST, J.—Rosaura Del Carmen Rodriguez appeals the Washington State Bar Association's (WSBA) recommendation that she be disbarred for submitting documents with forged signatures to a tribunal and later denying it under oath to avoid discipline. Although the presumptive sanction for this misconduct is disbarment, the hearing officer recommended a two-year suspension based largely on Rodriguez's relative inexperience in the practice of law. The WSBA Disciplinary Board (Board) increased the recommended sanction to disbarment.

Rodriguez claims three of the hearing officer's findings were not supported by substantial evidence and that disbarment is not an appropriate sanction. We hold that substantial evidence does support the hearing officer's findings and consequently reject Rodriguez's argument. We find no reason to depart from the sanction recommended by a nearly unanimous vote of the Board and therefore disbar Rodriguez from the practice of law.

## I. FACTS AND PROCEDURAL HISTORY

This action arose out of Rodriguez's representation of a client detained on an immigration hold. At the time, Rodriguez worked as an associate at the law firm Rios Cantor PS. In 2006, before Rodriguez represented the client, an immigration judge denied the client's application for asylum and cancellation of removal. The client could have remained in the United States pending an appeal to the Board of Immigration Appeals (BIA), but the client's former attorney, Catherine Willmore, failed to file the appeal. The client was not informed of this error and became subject to immediate deportation.

In November 2006, Immigration and Customs Enforcement (ICE) agents arrested the client pursuant to the deportation order and detained him at ICE's Northwest Detention Center in Tacoma, Washington. During the week of Thanksgiving, Willmore contacted Rodriguez's supervisor, Manuel Rios, and asked that Rios Cantor take over the case and file the late appeal. Because Rios

was leaving town for the holiday, he asked Rodriguez to handle the matter. Willmore paid the client's legal fees by check dated November 22, 2006, beginning Rios Cantor's representation of the client.

Rodriguez was under extreme pressure to act swiftly. According to the disciplinary hearing officer, "the only thing standing between [the client] and a flight to his home country of El Salvador was the necessity for the United States Government to obtain travel documents for him." Clerk's Papers (CP) at 107. Rodriguez prepared a motion to the BIA requesting leave to file a late notice of appeal based on Willmore's ineffective assistance of counsel. The motion is dated November 23, 2006—Thursday of the week Rodriguez took the case—and the Department of Justice stamped the motion as received the following Monday. In support of the motion, Willmore prepared a declaration acknowledging her ineffective assistance. Rodriguez drafted a declaration for the client and a notice of appearance, both of which purport to bear the client's signature.

The BIA granted Rodriguez's motion to file a late appeal, and Rodriguez later timely filed an appellate brief with the BIA. She did not consult the client regarding which issues to raise in the appeal. The only issues appealed by Rodriguez were asylum and cancellation of removal, both of which involve a very high standard of proof. Rodriguez did not seek temporary protected status (TPS)

for the client.[1]  However, the WSBA's immigration law expert testified that TPS would have been the least desirable of these three remedies because it does not confer a permanent status and would not have benefited the client's children. Further, the option to apply for TPS remained open to Rodriguez's client for 60 days after final action on his appeal.

In March 2007, Rios Cantor received notice of the BIA's adverse decision on the appeal.  One of the firm's legal assistants sent a copy of the decision with a letter to the client stating that the firm was not his legal representative, that its role had been to help Willmore with his appeal, and that he would need to retain a lawyer if he wished to appeal the BIA decision to the Ninth Circuit Court of Appeals.  Rodriguez did not see this letter until after it had been sent.  This letter was the only written correspondence between Rodriguez or her firm and the client.

The client hired Cynthia Irvine as his counsel in April 2007.  Irvine contacted Rodriguez's supervisor and told him she was investigating possible ineffective assistance of counsel on the parts of Willmore and Rodriguez.  Irvine also called Rodriguez.  Rodriguez first told Irvine that she had never met with the client, then said that another associate had met with him, and finally stated that she had visited the detention center herself to obtain the client's signature.  Rodriguez

---

[1]TPS is granted to foreign nationals currently residing in the United States whose homeland conditions are recognized by the United States as being temporarily unsafe.  8 U.S.C. § 1254a.

later explained that these inconsistencies resulted because she did not have the file in front of her at the time and could not recall much about the particular incidents. Irvine filed a motion to reopen the client's case based on the ineffective assistance of both Willmore and Rodriguez. Eventually, Irvine successfully petitioned for TPS, and the case was administratively closed.

Irvine also sent a grievance to the WSBA concerning Rodriguez's ineffective assistance. On September 9, 2008, the WSBA deposed Rodriguez. She testified that she went to the detention center to meet with the client on November 22, 2006. Rodriguez was shown attorney sign-in logs from the detention center that did not contain her name, and she explained that she may have been waved through without signing in. Rodriguez further testified that she witnessed the client sign the declaration and the notice of appearance in her presence.

By letter, Rodriguez later retracted her testimony that she visited the client on November 22, 2006, and instead said that she visited him on November 20, 2006. The detention center records from November 20, 2006, do not show that the client left his unit to visit the attorney consultation area or returned from there. The attorney sign-in log does show that Rodriguez signed into the detention center on November 20, 2006, for a court appearance with another client. Similarly, Rios Cantor's firm records show that Rodriguez visited the detention center on November 20, 2006, for initial consultations with two other clients. However, the

firm's mileage expense record attributes travel costs on November 20, 2006 to the client.

After investigating, the WSBA charged Rodriguez with five counts of misconduct:

## Count 1

84. By making one or more materially false statements under oath at her WSBA deposition when she knew them to be false, Respondent committed the crime of perjury (RCW 9A.72.020) and/or the crime of false swearing (RCW 9A.72.040)[2] and/or engaged in dishonesty, deceit and/or misrepresentation, in violation of RPC 8.4(b) and/or RPC 8.4(c) and/or RPC 8.4(d) and/or RPC 8.4(i) and/or RPC 8.4(*l*).

## Count 2

85. By submitting one or more documents to the BIA that Respondent knew to contain a false signature and/or by putting off as true a written instrument she knew to be forged, Respondent committed the crime of forgery (RCW 9A.60.020(1)(b))[3] and/or engaged in deceit and/or misrepresentation, in violation of RPC 8.4(b) and/or RPC 8.4(c) and/or RPC 3.3(a)(1) and/or RPC 3.3(a)(4).

## Count 3

86. By failing to adequately consult with [the client] about his appeal and/or alternative means of relief and/or by failing to consult with him regarding and/or to schedule a bond hearing, Respondent violated RPC 1.3 and/or RPC 1.4(a)(2) and/or RPC 1.4(b).

## Count 4

87. By accepting compensation from Ms. Willmore to

---

[2]"A person is guilty of false swearing if he or she makes a false statement, which he or she knows to be false, under an oath required or authorized by law." RCW 9A.72.040(1). "False swearing is a gross misdemeanor." RCW 9A.72.040(2).

[3]"A person is guilty of forgery if, with intent to injure or defraud" he or she "puts off as true a written instrument which he or she knows to be forged." RCW 9A.60.020(1)(b). "Forgery is a class C felony." RCW 9A.60.020(3).

represent [the client], without obtaining [his] informed consent to the arrangement and/or by failing to assure that there would be no interference with her professional judgment due to the potentially conflicting interests of Ms. Willmore and [the client], Respondent violated RPC 1.8(f)(1) and/or RPC 1.8(f)(2).

Count 5

88. By failing to clarify to [the client] which attorney was representing him in his immigration matter, Respondent violated RPC 1.4(a)(2).

CP at 57-58.

At the disciplinary hearing, the WSBA presented evidence that Rodriguez had submitted documents with forged signatures to the BIA. The client testified that he had never seen Rodriguez before that hearing and did not sign the documents at issue. An associate warden from the detention center testified it was highly unlikely that a detainee's visit to the attorney consultation area would be absent from the detainee tracking log, despite Rodriguez's claim that she had met with the client. A WSBA handwriting expert opined that the signatures on the client's declaration and the notice of appearance were forgeries. He stated that the differences between the questioned signatures and the client's genuine signature were "persistent" and "fundamental to the writing." Verbatim Transcript of Proceedings (VTP) (Oct. 20, 2010) at 256.

The WSBA also presented evidence as to deficiencies in Rodriguez's representation of the client. An immigration law expert testified to the errors

Willmore committed in handling the case and that Rodriguez failed to rectify after she took over representation.

Rodriguez continued to assert that she had met with the client and that she had obtained his signatures on the declaration and the notice of appeal. According to Rodriguez, at the meeting she read the declaration to the client in Spanish and witnessed him sign it.

Rodriguez also presented positive testimony about her fitness as an attorney. Rios testified that Rodriguez was a hardworking, honest, and compassionate attorney who cares about her clients. Two additional witnesses who knew Rodriguez as a lawyer testified to her good character and reputation.

The hearing officer found the WSBA proved counts 1, 2, 3, and 5 by a clear preponderance of the evidence but failed to prove count 4. Specifically, the hearing officer found that (1) Rodriguez had intentionally filed forged documents with the BIA, (2) Rodriguez intentionally made false statements at her deposition to avoid discipline, (3) Rodriguez knowingly failed to consult with the client regarding possible courses of action and took no steps to obtain his release on bond, and (4) Rodriguez negligently failed to clarify for the client who was representing him.

The hearing officer applied the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 & Supp. 1992) (ABA *Standards*). The hearing

officer concluded that the presumptive sanction was disbarment for counts 1 and 2, suspension for count 3, and a reprimand for count 5. The hearing officer found two aggravating factors: multiple offenses and dishonest or selfish motive.[4] Conversely, the hearing officer found three mitigating factors: absence of a prior disciplinary record, inexperience in the practice of law, and good character or reputation. Focusing on Rodriguez's lack of a disciplinary record, inexperience in the practice of law at the time she submitted the forgeries, and her desire to help her client avoid deportation, the hearing officer recommended a two-year suspension.

Rodriguez appealed to the Board. She asked the Board to dismiss counts 1 and 2 due to insufficient evidence or, in the alternative, to adopt the hearing officer's recommended sanction. The WSBA argued that the hearing officer's recommended sanction was too lenient and asked the Board to increase the sanction to disbarment.

The Board adopted the hearing officer's findings of fact (FOF) and conclusions of law. By an eight to one vote, the Board increased the recommended sanction from a two-year suspension to disbarment, finding the mitigating factors did not outweigh the aggravating factors and the presumptive sanction was appropriate. The dissenting Board member agreed with the hearing officer that

---

[4]The dishonest or selfish motive aggravating factor applied only to count 1.

Rodriguez's inexperience in the practice of law justified lowering the presumptive sanction. He recommended a three-year suspension.

## II. ISSUES PRESENTED

A.  Does substantial evidence support the hearing officer's findings that Rodriguez lied about meeting with the client and obtaining the client's signature on the declaration and notice of appearance?

B.  Is disbarment the appropriate sanction for Rodriguez's violations?

## III. ANALYSIS

Rodriguez challenges the sufficiency of the evidence supporting certain FOF made by the hearing examiner. She also argues that disbarment is not the appropriate sanction, even if sufficient evidence supports those findings. We reject her challenges.

A.  Substantial Evidence Supports the Findings of Fact

"This court bears the ultimate responsibility for lawyer discipline in Washington." *In re Disciplinary Proceeding Against Marshall*, 160 Wn.2d 317, 329, 157 P.3d 859 (2007). Nevertheless, "we give considerable weight to the hearing officer's findings of fact." *Id.* at 329-30. This court will accept challenged findings of fact so long as they are supported by substantial evidence. *Id.* at 330. "Substantial evidence is evidence sufficient 'to persuade a fair-minded, rational person of the truth of a declared premise.'" *Id.* (internal quotation marks omitted) (quoting *In re Disciplinary Proceeding Poole*, 156 Wn.2d 196, 209 n.2, 125 P.3d

954 (2006)). "We will not overturn findings based simply on an alternative explanation or versions of the facts previously rejected by the hearing officer." *Id.* at 331.

Rodriguez argues that the hearing officer's amended FOF 58 and 59, and FOF 60 are not supported by substantial evidence. In these findings, the hearing officer noted:

58. The clients noted in the firm's initial consultation log for November 20 do not appear on Respondent's sign-in to the Detention Center that day. One of those clients, (Francisco), is shown on Exhibit A-114 as returning to B-3 from an attorney visit on November 20.

59. A firm mileage expense reimbursement record for Respondent shows "11/20/06 Intakes [the client]." Exhibit 152, p.3. Rios Cantor, P.S.'s informal policy was to split the mileage cost between all clients visited. This record attributes all mileage for a November 20 trip to the Tacoma Detention Center to [the client]. This record cannot be satisfactorily reconciled with the firm's initial consultation log and Detention Center records, which together show that Respondent visited multiple clients that day, none of whom was [the client here]. The Detention Center B-3 detainee movement log and the firm's initial consultation log are more reliable records.

60. Having carefully considered and weighed the evidence, including witness demeanor and motivation, the consistency and logical persuasiveness of the testimony, and the lack of any reliable record of a Detention Center visit where a record should exist, the hearing officer concludes that the clear preponderance of the evidence establishes that Respondent never met with [the client]. This being the case, since Respondent prepared and finalized documents bearing signatures that were not his, she knew when she submitted them to the BIA that the signatures were not genuine.

11

Decision Papers (DP) at 13, 30-31. Inherent in Rodriguez's challenge to these findings is the contention that without them, the record cannot establish she submitted falsified documents to a tribunal.

First, Rodriguez argues the evidence does not support the hearing officer's finding that the detention center's detainee movement logs and the firm's initial consultation log were more reliable than the firm's mileage reimbursement record. The detention center's associate warden testified that every time detainees leave their cells, their movement is recorded. But cross-examination revealed that the detention center logs are sometimes incomplete or illegible. Counsel pointed out several examples where a detainee was logged out as leaving his unit, but never logged in as returning, or where a detainee returned to the unit with no record entry of ever leaving the unit.

Rodriguez also notes that the detention center logs do not reflect that the client left his cell for medicine or that medical personnel brought medicine to him on November 20, 2006, although the client testified that he has diabetes and takes four pills per day.

Rodriguez next argues the client is not a credible witness and his testimony should have been disregarded. Rodriguez contends that the client made false claims in his first asylum application and misrepresentations on his tax returns.

Rodriguez claims these actions, considered in the aggregate, undermine the client's reliability.[5]

Lastly, Rodriguez asks us not to accept the handwriting expert's opinion that the client did not sign the declaration or notice of appearance. The expert admitted that trauma could adversely influence handwriting, and his analysis as to whether Rodriguez signed the documents was inconclusive.

All of Rodriguez's arguments challenging the sufficiency of the evidence ask us to disregard the hearing officer's reasonable inferences and credibility determinations. We give substantial deference to a hearing officer's credibility determinations because the hearing officer is in the best position to make such judgments. *Marshall*, 160 Wn.2d at 330; *Poole*, 156 Wn.2d at 212. The hearing officer is permitted to draw reasonable inferences from the evidence and disregard unreasonable alternative explanations. *In re Disciplinary Proceeding Against Cohen*, 149 Wn.2d 323, 333, 67 P.3d 1086 (2003).

The hearing officer reasonably determined the detention center records and the firm's initial consultation log were more reliable than the mileage expense reimbursement record. The mileage record was generated from information

---

[5]Rodriguez also claims the client could not recall when he entered the United States, noting he testified that he came to the country in February 2004, although ICE records indicate he entered in December 1993. Although the client first stated at the disciplinary hearing that he entered the United States in February 2004, he immediately corrected himself and said the year was 1994.

provided by Rodriguez. Because it was irreconcilable with information provided by disinterested parties, the hearing officer appropriately gave more weight to the other evidence.

While the detention center log contained several inaccuracies, the hearing officer concluded the log was unlikely to be missing records of a detainee going both to and from the attorney visitation area. This reasonable inference is supported by the associate warden's testimony that the possibility of this kind of oversight was very slim. According to the associate warden, keeping track of the detainees is "what [the staff] live and breathe and do." VTP (Oct. 20, 2010) at 218. Rodriguez's argument regarding the client's medication is speculative. Aside from the brief mention of his diabetes and need for medication at the disciplinary hearing, there is no evidence in the record of the client's treatment regimen while in detention.

Even if we were to disregard the detention center records because of some inaccuracies, substantial evidence supports the hearing officer's findings. The client has consistently maintained that he did not meet with Rodriguez or sign the documents at issue. The hearing officer found the client's past misstatements did not warrant disregarding his testimony, and we give substantial deference to her credibility determination. *See Marshall*, 160 Wn.2d at 330.

In addition to the client's testimony, the handwriting expert gave his opinion that the signatures at issue were forgeries. The expert based his opinion on "fundamental" and "persistent" differences between the signatures on the declaration and notice of appeal and sample signatures known to be the client's. VTP (Oct. 20, 2010) at 256. The expert testified that he had the strongest possible confidence in his conclusion that the signatures were forgeries. *Id.* at 259. Hearing officers may accept or reject expert testimony. *In re Disciplinary Proceeding Against Botimer*, 166 Wn.2d 759, 771, 214 P.3d 133 (2009). The hearing officer here accepted the expert's opinion as "qualified and credible." DP at 11. We will not disturb this finding on appeal.

Substantial evidence supports the conclusion that the signatures were forged and Rodriguez knew they were forged.

B.     Disbarment Is Appropriate for Rodriguez's Ethical Violations

The ABA *Standards* "govern lawyer sanctions in Washington." *Marshall*, 160 Wn.2d at 342. Based upon the ABA *Standards*, we use a three-step process to analyze a recommended sanction. *In re Disciplinary Proceeding Against Preszler*, 169 Wn.2d 1, 18, 232 P.3d 1118 (2010). First, we "'evaluate whether the Board properly determined the presumptive sanction by considering (1) the ethical duties violated, (2) the lawyer's mental state, and (3) the actual or potential injury caused by the lawyer's conduct.'" *Id.* (quoting *Marshall*, 160 Wn.2d at 342). "Second,

we determine whether any aggravating or mitigating circumstances call for a departure from the presumptive sanction." *Id.* Third, and only if raised by the attorney being disciplined, "we evaluate the Board's recommended sanction based on '(1) proportionality of the sanction to the misconduct and (2) the extent of agreement among the members of the Disciplinary Board.'" *Id.* (quoting *In re Disciplinary Proceeding Against Schwimmer*, 153 Wn.2d 752, 764, 108 P.3d 761 (2005)).

We recognize that the Board is "[t]he only body in the state to consider the full spectrum of disciplinary matters from the most trivial to the most serious." *In re Disciplinary Proceeding Against Noble*, 100 Wn.2d 88, 94, 667 P.2d 608 (1983). For this reason, we provide substantial deference to the sanction recommended by the Board, and we do not "lightly depart" from this recommendation. *Id.* "Accordingly, we will adopt the sanction recommended by the Disciplinary Board unless we are able to articulate specific reasons for adopting a different sanction." *Id.* at 95. Where the sanction recommended by the Board differs from the sanction recommended by the hearing officer, "[w]e give more weight to the Disciplinary Board's recommendation based on its unique experience and perspective in the administration of sanctions." *In re Disciplinary Proceeding Against Van Camp*, 171 Wn.2d 781, 809, 257 P.3d 599 (2011).

1.  *The hearing officer and Board correctly determined that disbarment is the presumptive sanction for Rodriguez's conduct*

Rodriguez concedes that the presumptive sanction for counts 1 and 2 is disbarment if we determine that the hearing officer's findings are supported by substantial evidence. This concession is well received. We have repeatedly concluded that disbarment is the presumptive sanction for submitting forged documents to a tribunal or testifying falsely under oath during disciplinary proceedings. *In re Disciplinary Proceeding Against Christopher*, 153 Wn.2d 669, 679, 105 P.3d 976 (2005); *In re Disciplinary Proceeding Against Whitt*, 149 Wn.2d 707, 719, 72 P.3d 173 (2003).

2.  *The balance of aggravating and mitigating factors does not justify a departure from the presumptive sanction of disbarment*

Because Rodriguez argues that a two year suspension is the appropriate sanction, we must determine whether the aggravating and mitigating factors found here justify a departure from the presumptive sanction. We will only depart from the presumptive sanction where the balance of aggravating and mitigating factors is "sufficiently compelling." *Cohen*, 149 Wn.2d at 339. Importantly, "[e]ven where there are several mitigating factors . . . the attorney's misconduct may still warrant the presumptive sanction." *In re Disciplinary Proceeding Against Smith*, 170 Wn.2d 721, 737, 246 P.3d 1224 (2011).

17

Rodriguez's case involves two aggravating factors and three mitigating factors. The hearing officer found Rodriguez's offenses aggravated by the fact that she committed multiple offenses and had a dishonest or selfish motivation for the conduct underlying count 1. Conversely, the hearing officer found Rodriguez's offenses mitigated by her inexperience in the practice of law, absence of a prior disciplinary history, and good character.

The hearing officer appears to have empathized with Rodriguez, and not without reason. By all accounts, she was an attorney committed to her work. Her client faced distressing circumstances when she took this case, and she was somewhat new to the practice of law when her firm took the appeal. The hearing officer determined these factors substantially mitigated her offenses.

However, we conclude that the balance of aggravating and mitigating factors does not justify a departure from the presumptive sanction. The weight given to mitigating factors depends on the totality of the circumstances. *In re Disciplinary Proceeding Against Dornay*, 160 Wn.2d 671, 688, 161 P.3d 333 (2007). The hearing officer found Rodriguez committed what amounted to two different crimes of dishonesty—forgery and false swearing—in two different legal proceedings. Even if we accept the hearing officer's determination that exigent circumstances may have mitigated, although not excused, Rodriguez's decision to commit fraud on the legal system by submitting documents with a forged signature, Rodriguez's

dishonesty did not end there. With two years to contemplate her actions, she baldly lied under oath when the WSBA investigated. Good character and a lack of a disciplinary record do not substantially mitigate these two severe ethical breaches. *See, e.g., Whitt*, 149 Wn.2d at 722. Under these circumstances, the Board correctly determined that no "sufficiently compelling" reason justifies imposing a lesser sanction. *Cohen*, 149 Wn.2d at 339. Disbarment is appropriate.

3.    *Considerations of proportionality or Board unanimity do not justify a departure from the presumptive sanction of disbarment*

Rodriguez also argues that disbarment is disproportionate and unwarranted given the Board's lack of unanimity in imposing the sanction. We disagree.

a)    *Disbarment is proportional to similarly situated cases*

When evaluating proportionality, "we analyze whether the recommended sanction is proper when compared to similarly situated cases." *Christopher*, 153 Wn.2d at 686-87. Sanctions are considered appropriate so long as they are "'roughly proportionate to sanctions imposed in similar situations or for analogous levels of culpability.'" *In re Disciplinary Proceeding Against Anschell*, 141 Wn.2d 593, 615, 9 P.3d 193 (2000) (quoting *In re Disciplinary Proceeding Against Gillingham*, 126 Wn.2d 454, 469, 896 P.2d 656 (1995)). "The attorney facing discipline 'bears the burden of bringing cases to the court's attention that demonstrate the disproportionality of the sanction imposed.'" *In re Disciplinary*

*Proceeding Against Cramer*, 168 Wn.2d 220, 240, 225 P.3d 881 (2010) (quoting *Cohen*, 150 Wn.2d at 763).

Rodriguez argues that a three year suspension is proportionate to other disciplinary cases. She cites four cases in support of this proposition: *Preszler*; *Dornay*; *Christopher*; and *In re Disciplinary Proceeding Against Dynan*, 152 Wn.2d 601, 98 P.3d 444 (2004). The WSBA contends that the proportionality of disbarment is demonstrated by three other cases: *In re Disciplinary Proceeding Against Whitney*, 155 Wn.2d 451, 120 P.3d 550 (2005); *In re Disciplinary Proceeding Against Guarnero*, 152 Wn.2d 51, 93 P.3d 166 (2004); and *Whitt*. We agree with the WSBA that *Guarnero* and *Whitney* are the most similarly situated cases and that they demonstrate the proportionality of disbarment under these circumstances.

The facts in *Guarnero* closely parallel the facts in Rodriguez's case. Guarnero forged his client's signature on a declaration he submitted to the tribunal. *Guarnero*, 152 Wn.2d at 54-56. Just as Rodriguez did, Guarnero committed this forgery in order to avoid a legal disaster for his client. *Id.* When Guarnero's forgery came to light, he lied under oath during disciplinary proceedings. *Id.* at 56-57. A nearly unanimous Board recommended Guarnero's disbarment, and we affirmed that recommendation. *Id.*

The parallels between *Guarnero* and this case extend beyond factual matters. The balance of aggravating and mitigating factors in *Guarnero* also closely resembles the balance found here. The *Guarnero* hearing officer found two aggravating factors present here: dishonest or selfish motivation and multiple offenses. *Id.* at 57. The *Guarnero* hearing officer found three other aggravating factors not found here due to a charging decision: a pattern of misconduct, submission of false evidence or statements during the disciplinary process, and refusal to acknowledge the wrongful nature of the conduct at issue. *Id.* The hearing officer did not find those aggravating factors in Rodriguez's case because they formed the substance of the other count warranting disbarment, Rodriguez's false statements under oath. *See Whitt*, 149 Wn.2d at 720 (matters that form substantive charges cannot become aggravating factors). The *Guarnero* hearing officer found one final aggravating factor not present here, substantial experience in the practice of law. 152 Wn.2d at 57. The hearing officer here found two mitigating factors not present in *Guarnero*—Rodriguez's inexperience in the practice of law and good character. Even assuming that Rodriguez's good character and inexperience warrant mitigation, despite multiple acts of dishonesty and her nearly five years of legal practice when she lied under oath to the WSBA, Rodriguez's conduct, aggravating factors, and mitigating factors here are substantially similar to those in

*Guarnero*. The proportionality analysis requires that Rodriguez receive a similar sanction.

*Whitney* involved a nearly identical fact pattern. Whitney, acting as a guardian ad litem during a dissolution proceeding, submitted a report containing intentional falsehoods to the tribunal. *Whitney*, 155 Wn.2d at 455-56. During a deposition with the bar, and again during the disciplinary proceeding, Whitney testified under oath that the report was truthful. *Id.* at 456, 458. The Board voted seven to one to disbar Whitney, and we adopted this recommendation. *Id.* at 460, 470. Again, the substance of Whitney's violations, lying to a tribunal and then lying under oath to the WSBA during disciplinary proceedings, resembles Rodriguez's violations. Just as in *Guarnero*, the aggravating and mitigating factors in *Whitney* mirror those here once the WSBA's charging decisions are accounted for. *See Whitney*, 155 Wn.2d at 468-69 (the WSBA used Whitney's lying during the disciplinary proceeding to aggravate the original offense, rather than charge the deception as a separate violation). Again, the similarity of Whitney's offense to Rodriguez's requires similarity of punishment.

*Whitt* is not quite as analogous as *Guarnero* and *Whitney*, but it is no less instructive. Unlike *Guarnero* and *Whitney*, the underlying ethical violations triggering the WSBA's investigation in *Whitt* did not warrant disbarment. *Whitt*, 149 Wn.2d at 710, 717. Nonetheless, we disregarded the Board's recommendation

that we suspend Whitt and disbarred her instead based solely on the severity of the charge of lying during a disciplinary proceeding. *Id.* at 720. Because those that testify falsely during a disciplinary proceeding fail to discharge their professional duties to the legal system and the legal profession, we held that disbarment is the appropriate sanction simply for lying during the WSBA's investigation into other offenses. *Id. Whitt* indicates that disbarment would be a proportional sanction in this case if Rodriguez had only testified falsely during the disciplinary process.

The cases Rodriguez cites are not comparable to hers because they involved different misconduct, less culpable attorneys, and substantial mitigation. *Preszler* involved an attorney that backdated a fee agreement and submitted the agreement to a bankruptcy trustee. 169 Wn.2d at 11. The bar did not charge Preszler with lying during disciplinary proceedings, nor did it argue that he had done so in order to aggravate his other offenses. *See id.* at 31-32.[6] Unlike Rodriguez, Preszler did not compound his original falsity by testifying falsely during the disciplinary process.

Dornay testified falsely during a dissolution proceeding. *Dornay*, 160 Wn.2d at 677. This falsehood occurred in the context of her abusive relationship with one of the parties to the divorce. *Id.* at 677-78. Like Preszler, Dornay did not

---

[6]We noted that some evidence indicated that Preszler provided inconsistent testimony during the disciplinary process. *Preszler*, 169 Wn.2d at 32. However, there were no findings that Preszler intentionally lied. *See id.* at 31-32. In contrast, the hearing officer here found Rodriguez intentionally testified falsely during the disciplinary process. DP at 14.

compound her violation by lying to the WSBA. *Id.* at 678. Further, we found Dornay's culpability substantially mitigated by the fact that Dornay's false testimony arose due to intimate partner violence and an abusive relationship. *Id.* at 688. Even if we accept that exigent circumstances should similarly mitigate Rodriguez's submission of forgeries to the BIA, she can make no such claim to lessened culpability for her knowing falsehoods to the WSBA.

Christopher committed a violation similar to one of Rodriguez's. She submitted a forged document to a tribunal. *Christopher*, 153 Wn.2d at 674. Again, and importantly, Christopher did not testify falsely during the WSBA's investigation. *Id.* at 675. Instead she stipulated to most of the facts at issue in the disciplinary proceeding and cooperated fully with the investigation. *Id.* at 675, 683. Further, we affirmed eight of the mitigating factors adopted by the Board and two of the aggravating factors. *Id.* at 685-86. This dramatic preponderance of mitigating factors over aggravating factors led to our decision to impose a sanction of suspension, rather than disbarment. *Id.* at 686. Rodriguez's case does not involve such a significant preponderance of mitigating factors over aggravating factors.

Dynan believed his actual hourly rate was irrelevant to the question of reasonable attorney fees and submitted documents to the tribunal containing false billing rates. *Dynan*, 152 Wn.2d at 607, 613. Again, the WSBA did not charge

24

Dynan with false testimony during the disciplinary proceeding, nor did it argue that he should receive an aggravated sanction for having done so. *See id.* at 610. We imposed a lesser sanction based partly on the fact that Dynan did not intend to deceive the court and had no selfish motivation underlying his falsity. *Id.* at 625. In contrast, Rodriguez both intended to deceive the tribunal and had a selfish motivation underlying her false testimony to the WSBA.

Our proportionality analysis requires that similar violations receive similar sanctions. The facts and aggravating and mitigating factors here closely mirror those in *Guarnero* and *Whitney*. Each of those cases involved two instances of dishonesty during official proceedings: Guarnero submitted forgeries and then lied about having done so, and Whitney submitted a report containing false statements and then similarly lied to cover up his false testimony. We imposed the sanction of disbarment in those cases. Even if Rodriguez had only lied during a disciplinary proceeding, proportionality with *Whitt* requires disbarment. The cases Rodriguez cites are not similarly situated with her case because none of the attorneys in those cases testified falsely to the WSBA, and most of the cases involved attorneys with less culpable mental states or mitigating factors that strongly pointed to a lesser sanction. We reject her argument that disbarment is disproportionate.

b)      *We provide deference to sanction recommendations from a nearly unanimous Board*

It is true that "a recommendation from a divided Board deserves less weight." *Marshall*, 160 Wn.2d at 343 (citing *Whitney*, 155 Wn.2d at 469). However, the Board's vote was nearly unanimous here (eight to one), and the recommendation of an almost unanimous Board deserves considerable deference. *Whitney*, 155 Wn.2d at 469. We therefore see no reason to depart from the overwhelming consensus of the Board in imposing disbarment as the appropriate sanction for Rodriguez's conduct.

## IV.   CONCLUSION

Faced with a bad situation, Rodriguez made a bad choice. We find substantial evidence to support the hearing officer's findings that, contrary to her oath as an officer of the court, Rodriguez submitted forged documents to a tribunal. We do not need to decide whether the circumstances Rodriguez faced when she took her client's appeal mitigated her submission of forgeries to a tribunal. Rodriguez's acts of dishonesty did not stop with these forgeries. Faced with a bar complaint and a WSBA investigation, Rodriguez testified falsely about the matter under oath. We recognized in *Whitt* that the self-regulating nature of the bar makes false testimony during the disciplinary process "one of the most egregious charges that can be leveled against an attorney." 149 Wn.2d at 720. Such false testimony subverts efforts to police and remedy misconduct and ensure public confidence in

26

the legal system. *Id.* Like the Board, we see no sufficiently compelling reason to impose less than the presumptive sanction for Rodriguez's repeated acts of dishonesty. Consequently, we order Rosaura Del Carmen Rodriguez (Bar No. 34334) disbarred from the practice of law.

Fairhurst, J. _____

WE CONCUR:

Madsen, C.J. _____

_____

_____

Stephens, J. _____

Wiggins, J. _____

_____

No. 200,960-3

GONZÁLEZ, J. (dissenting)—Rosaura Del Carmen Rodriguez's conduct is unacceptable, but the balance of aggravating and mitigating factors warrants a less severe sanction than disbarment. Rodriguez's inexperience in the practice of law, coupled with her motive to assist a client in need of swift legal assistance, weighs against her disbarment, as do the additional mitigating factors of absence of prior disciplinary record and her otherwise good character and reputation. I respectfully dissent.

The majority compares this case to *In re Disciplinary Proceeding Against Guarnero*, 152 Wn.2d 51, 93 P.3d 166 (2004), but the balance of mitigating and aggravating factors in that case was substantially different. In *Guarnero*, the attorney forged his client's signature, sent the forgery to the court and the prosecutor, and took other deceptive measures to conceal the forgery. *Id.* at 57. Guarnero's substantial experience in the practice of law was one of six aggravators. *Id.* The presumptive sanction for Guarnero's misconduct was disbarment, which the hearing officer found was appropriate despite the sole mitigating factor of absence of prior disciplinary record. *Id.*; *see also In re Disciplinary Proceeding Against Whitney*, 155 Wn.2d 451, 467-69, 120 P.3d 550 (2005) (applying presumptive sanction of disbarment to

attorney who testified falsely under oath, where board found seven aggravating factors and one mitigating factor).

Although Rodriguez was found to have committed similar acts to those of Guarnero, the relevant mitigating factors are sufficiently compelling to justify a departure from the presumptive sanction of disbarment. Unlike Guarnero, who had practiced law for more than a decade, Rodriguez had been an attorney for only three years before committing the act that is at the heart of this disciplinary action. Furthermore, Rodriguez was an associate in a high-volume practice when she was confronted by her client's dire need for quick assistance to avoid the consequences of his prior attorney's mistake. Although these circumstances do not justify Rodriguez's misconduct, they do warrant a lesser punishment than disbarment.

Considering the seriousness of the misconduct at issue in this case, particularly Rodriguez's attempt to conceal her prior misconduct, I would suspend Rodriguez from the practice of law for three years. This is the longest term of suspension we generally impose. *In re Disciplinary Proceeding Against McMullen*, 127 Wn.2d 150, 170, 896 P.2d 1281 (1995). Because disbarment is disproportionately harsh in light of the applicable mitigating factors, I respectfully dissent.

González, J.